U.S. DISTRICT COURT
EASTERN DISTRICT
FILED
2012 SEP -5 P 1:58
JON W. SANFILIPPO
CLERK

Copy hand-delivered to chambers

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                          Case No. 12-CR-16 (JPS)

SHAQUILLA R. HANNON,

    Defendant.

---

### PLEA AGREEMENT

---

1. The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and William J. Lipscomb, Assistant United States Attorney, and the defendant, Shaquilla Hannon, individually and by her attorney, Joseph A. Bugni, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in an indictment with 8 counts of submitting false claims for federal income tax refunds to the Internal Revenue Service, in violation of Title 18, United States Code, Section 287.

3. The defendant has read and fully understands the charges contained in the indictment and fully understands the nature and elements of the crimes with which she has been charged and that the charges and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4. The defendant voluntarily agrees to plead guilty to Count 6 of the indictment, which is set forth below in full:

> **THE GRAND JURY CHARGES:**
>
> 1. At all times material to this indictment, the defendant, Shaquilla R. Hannon, was a resident of Milwaukee, Wisconsin.
>
> 2. The defendant prepared false and fraudulent federal income tax returns for herself, acquaintances, and others for the 2008 tax year. The returns sought tax refunds from the Internal Revenue Service to which the taxpayers were not entitled. To support the fraudulent refund claims, the defendant prepared Wage and Tax Statements (Forms W-2) reflecting false and fraudulent employment, income, and tax withholding information.
>
> 3. The defendant prepared at least 23 false and fraudulent income tax returns that were filed with the IRS seeking more than $100,000 in federal income tax refunds for the 2008 tax year.
>
> 4. On or about the dates indicated below, in the State and Eastern District of Wisconsin and elsewhere,
>
> **SHAQUILLA R. HANNON**
>
> did knowingly make and present, and cause to be made and presented, to the Internal Revenue Service, an agency of the U.S. Department of the Treasury, claims against the United States for payment, which she knew to be materially false, fictitious, and fraudulent, by preparing and causing to be prepared, and filing and causing to be filed, a federal income tax return as outlined in the chart below for the taxpayers, identified by their initials, and claiming an income tax refund in the stated amount, knowing such claim to be false, fictitious, and fraudulent.
>
> | Count | Date | Taxpayer | Tax year | Refund claim |
> |---|---|---|---|---|
> | 6 | January 21, 2009 | M.M. | 2008 | $6,405 |
>
> All in violation of Title 18, United States Code, Sections 2 and 287.

5. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense set forth above in paragraph 4 of this plea agreement. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and that these facts establish her guilt beyond a reasonable doubt.

2

In January and February of 2009, Shaquilla R. Hannon, then 24 years of age, was a resident of Milwaukee, Wisconsin. Hannon had worked for Integrated Community Resources ("ICR") in 2007 and for Nurses Now, LLC ("NN") in 2008. In January and February of 2009, Hannon used the W-2s she received from these employers as a template for false W-2s she prepared and submitted in support of false tax returns she filed on behalf of friends, neighbors and others for the 2008 tax year. She also filed a false tax return for herself. Hannon filed at least 23 false and fraudulent returns for the 2008 tax year. The aggregate amount of refunds sought through the filing of the tax returns was $100,119. The actual loss to the government was $62,173. Hannon received a portion of the $62,173 for herself.

In furtherance of the scheme, in January and February of 2009, Hannon obtained identifying information from friends, neighbors, and others (some whom learned from Hannon's friends of Hannon's tax preparation service) and used the information to prepare 2008 tax returns with significant claims for refunds. At the time, Hannon often stayed with her mother, G.K., at XXX Keefe Avenue, Milwaukee, Wisconsin. Hannon used the computer connected to the Internet at her mother's Keefe avenue home to prepare and electronically file the returns. Hannon used Turbo Tax software to prepare and file the returns. The IP address submitted by Intuit Inc. (Turbo Tax) to the IRS with each false return comes back to the AT&T internet service account at the Keefe Avenue residence held in the name of Killingworth's husband, L.K. The witness "taxpayers," on whose behalf Hannon filed the returns, have identified Hannon as the person who prepared their returns.

IRS agents executed a search warrant at the Keefe Avenue residence on October 9, 2009. The desktop computer was seized from an upstairs bedroom. The computer contained a Turbo Tax file consisting of one of the false 2008 tax returns (the file for W.E. -- count 4 of the Indictment). On

3

the computer desk, agents found a copy of Hannon's false 2008 Form 1040A, the legitimate W-2 issued to Hannon by ICR for 2007, the legitimate W-2 issued to Hannon by NN for 2008, a copy of A.E.'s false 2008 Form 1040A (charged in count 5) showing a date of transmission to Intuit, handwritten notes with the personal information (SS#s, birth dates, addresses, dependents names, bank accounts, occupations) for eight of the "taxpayers" Hannon filed false returns for in 2008.

The "taxpayers" on whose behalf Hannon filed false 2008 returns were interviewed by IRS agents. All seven of the "taxpayers" for counts 2 though 8 of the Indictment told investigators that the Form W-2 wages claimed on their returns were false as to employer, wages, and withholding, and none had provided the false W-2 to Hannon. The employers confirmed that the W-2s were false. Two of the taxpayers, A.E. (Count 5) and W.E. (Count 4), verified that there were false dependents claimed on their returns. The employers confirmed that all of the W-2s submitted in support of the false returns charged in the Indictment are fraudulent. The W-2s used in the returns of all of the counts charged are from employers, ICR and NN, where Hannon previously worked or where A.E. previously worked. Several of the returns showed identical amounts earned and withheld and claimed the same refund amount.

In essence, Hannon simply took two W-2s issued to her from her previous employers or from A.E.'s legitimate W-2, replicated them for the 2008 tax year, with minimal or no changes to the wage and withholding amounts, and then attached the false W-2s to returns of others, claiming large refunds (up to the maximum Earned Income Credit). For two of the charged counts (Count 2 and Count 7) neither taxpayer knew Hannon and did not authorize her to file returns on her behalf. Hannon obtained refunded amounts from the IRS by obtaining prepaid VISA cards in the taxpayer's names.

### M.M. (Count 6)

M.M told IRS investigators that she was not familiar with tax returns and did not know if her hair styling income from 2008 qualified her to file a tax return. M.M.'s brother recommended she speak to Shaquilla Hannon about her income and whether she qualified to file a tax return. Hannon told M.M. that she could file a 2008 tax return for her claiming the hobby income M.M. made from hair styling. Hannon told M.M. that she would charge $2,000 to prepare the tax return.

M.M. provided her personal and employment information to her brother who gave this information to Hannon.

Hannon filed a 2008 tax return for M.M. claiming a $6,405 refund based on claimed wages of $11,290 from Integrated Community Resources, a business for which Hannon had worked in 2007 and M.M. had never worked. The wages and deductions claimed mirror the legitimate wages and deductions for Hannon's W-2 from 2007. The 2008 tax return and claim for refund for M.M. was false and fraudulent.

This information is provided for the purpose of setting forth a factual basis for the defendant's guilty plea. It is not a full recitation of the defendant's knowledge of or participation in this offense.

### PENALTIES

6. The parties understand and agree that the offense to which the defendant will plead guilty carries the following maximum term of imprisonment and fine: Five (5) years and $250,000. The charge also carries a mandatory special assessment of $100 and a maximum term of supervised release of three years to follow any period of incarceration. The parties further recognize that a restitution order may be entered by the court.

5

7. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes, as well as the applicable sentencing guidelines with her attorney.

## ELEMENTS

8. The parties understand and agree that to sustain the charge of submitting a false claim to the United States, in violation of 18 U.S.C. § 287, as set forth in the indictment, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that the defendant made (or caused to be made) a claim against the United States or an agency of the United States;
>
> Second, that the claim was false, fictitious or fraudulent;
>
> Third, that the defendant knew the claim was false, fictitious, or fraudulent; and
>
> Fourth, that the defendant acted with the intent to defraud.

## SENTENCING PROVISIONS

9. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions that they believe to be applicable to the offense to which the defendant will

6

plead guilty. The defendant acknowledges and agrees that her attorney, in turn, has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw her guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

### Sentencing Guidelines Calculations

13. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge will consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which defendant is pleading guilty.

7

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing court will consider the total amount of the loss incurred by the victims as a result of the defendant's fraud even if not alleged in the offenses of conviction, and will use the total amount in calculating the sentencing guidelines range.

16. For purposes of determining the defendant's offense level under the sentencing guidelines, the defendant and her attorney acknowledge that, based upon the information presently available, the government believes that the loss amount associated with the defendant's criminal conduct charged in the indictment is more than $70,000 but less than $120,000. The defendant reserves the right to dispute the government's calculation of the loss amount. The parties acknowledge and understand that the amount of loss may differ from the amount of restitution imposed by the sentencing court.

## Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense to which the defendant will plead guilty is 6, as determined under Sentencing Guidelines Manual § 2B1.1(a)(2).

## Specific Offense Characteristics

18. The parties agree to recommend to the sentencing court that an 8-level increase under Sentencing Guidelines Manual § 2B1.1(b)(1)(E) is applicable to the offenses to which the defendant will plead guilty because the loss amount associated with the defendant's relevant conduct is more than $70,000 but less than $120,000.

8

### Acceptance of Responsibility

19.     The government agrees to recommend a two-level decrease for acceptance of responsibility, as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility.

### Sentencing Recommendations

20.     Both parties reserve the right to apprise the district court and the probation office of any and all information that might be pertinent to the sentencing process including, but not limited to, any and all conduct related to the offenses as well as any and all matters that might constitute aggravating or mitigating sentencing factors.

21.     Both parties reserve the right to make any recommendation regarding the defendant's custodial status pending the sentencing and any other matters not specifically addressed by this agreement.

22.     The government agrees to recommend a sentence of three-years probation, with an initial period of home detention consistent with the applicable sentencing guideline range as determined by the Court.

### Court's Determinations at Sentencing

23.     The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing

9

Case 2:12-cr-00016-JPS   Filed 09/05/12   Page 9 of 15   Document 15

guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw her guilty plea solely as a result of the sentence imposed on her by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

### Special Assessment

26. The defendant agrees to pay the special assessments in the amount of $100 prior to or at the time of sentencing.

### Restitution

27. The defendant agrees to make full restitution to the Internal Revenue Service ("IRS") for all of the fraudulent income tax refund claims in which she was involved, which is presently calculated to be $62,173. The defendant understands that because restitution for the offenses to which the defendant will plead guilty is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

28. In entering this agreement, the defendant acknowledges and understands that, in so doing, she surrenders any claims she may have raised in any pretrial motion, as well as certain rights, which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause, where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government was relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

   e. At such trial, the defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

11

29. The defendant acknowledges and understands that, by pleading guilty, she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights.

30. The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights including, but not limited to, the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

31. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

32. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant including, but not limited to, any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

33.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34.     The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

35.     The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

36.     The defendant understands that pursuant to the Victim and Witness Protection Act and the regulations promulgated under the Act by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

37.     The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditioned upon final resolution of this matter. If this
plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges

13

that were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

38. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is, in fact, guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 9/5/12

SHAQUILLA R. HANNON
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 9/5/12

JOSEPH A. BUGNI
Attorney for Defendant

For the United States of America:

Date: 9/5/12

JAMES L. SANTELLE
United States Attorney

Date: 9/5/12

WILLIAM J. LIPSCOMB
Assistant United States Attorney

15